Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Clayton D. Halunen
*halunen@halunenlaw.com*
Melissa W. Wolchansky
*wolchansky@halunenlaw.com*
Charles D. Moore
*moore@halunenlaw.com*
**HALUNEN LAW**
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

James A. Francis
*jfrancis@consumerlawfirm.com*
David A. Searles
*dsearles@consumerlawfirm.com*
John J. Soumilas
*jsoumilas@consumerlawfirm.com*
**FRANCIS & MAILMAN P.C.**
Land Title Building
100 South Broad Street, 19th Floor
Philadelphia, Pennsylvania  19110
Telephone: (215) 735-8600
Facsimile: (215) 940-8000

*Counsel for Plaintiff Sean Gilbert DeVries
and the Proposed Class*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SEAN GILBERT DEVRIES, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 3:16-cv-02953-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: November 30, 2016<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 17th Floor<br>Judge: Honorable William H. Orrick |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION.......................................................................................................1

STATEMENT OF RELEVANT FACTS...................................................................2

ARGUMENT ..............................................................................................................2

    I.      THIS DISPUTE IS PROPERLY BEFORE THE COURT..................2

    II.     DEVRIES DID NOT AGREE TO EXPERIAN'S TERMS AND
           CONDITONS AND THUS DID NOT CONSENT TO
           ARBITRATION...........................................................................3

    III.    THE APPLICABLE ARBITRATION PROVISION EXPLICITLY
           EXCLUDES THE CLAIMS DEVRIES BRINGS HERE ................10

    IV.    EXPERIAN HAS WAIVED THE ABILITY TO ARBITRATE...................13

          A.    Legal Standard on Waiver of Arbitration. ...............................14

          B.    Experian Knew of its Right to Arbitration. ..............................14

          C.    Experian has Acted Inconsistently With Its Claim to Arbitrate .........16

                1.    Experian Failed to Plead Arbitration as an Affirmative
                      Defense ....................................................................16

                2.    Experian has Engaged in Discovery and Taken Advantage of
                      the Court ...................................................................16

          D.    DeVries is Prejudiced by Experian's Delay...............................17

    V.     CONDITIONING A FREE FILE DISCLOSURE UPON AN
           CONSUMER'S AGREEMENT TO ARBITRATE VIOLATES
           PUBLIC POLICY...................................................................18

CONCLUSION ........................................................................................................21

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION
*DeVries v. Experian Information Solutions, Inc.*, No. 3:16-cv-02953-WHO

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Carkins*,
  135 U.S. 483 (1890) ........................................................................... 19

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
  6 P.3d 669 (Cal. 2000) ...................................................................... 18

*AT&T Mobility L.L.C. v. Concepcion,*
  563 U.S. 1745 (2011) ........................................................................... 4

*Berkson v. Gogo L.L.C.,*
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................... 3, 5, 7

*Butchers Union v. Farmers Mkts.,*
  67 Cal. App. 3d 905 (1977) ............................................................. 15

*Cape Flattery Ltd. v. Titan Mar., L.L.C.,*
  647 F.3d 914 (9th Cir. 2011) ........................................................... 12

*Capelli Enters. v. Fantastic Sams Solon Corp.,*
  No.5:16-cv-03401-EJD, 2016 U.S. Dist. LEXIS 115036 (N.D. Cal. Aug. 26, 2016) ............ 3

*Cara's Notions v. Hallmark Cards,*
  140 F.3d 566 (4th Cir. 1998) ........................................................... 12

*Cayanan v. Citi Holdings, Inc.,*
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) ....................................... 11, 12

*Coenen v. R.W. Pressprich & Co.,*
  453 F.2d 1209 (2d Cir. 1972) ........................................................... 12

*Crawford v. Beachbody, L.L.C.,*
  No. 14cv1583-GPC (KSC), 2014 U.S. Dist. LEXIS 156658 (S.D. Cal. Nov. 5, 2014) .......... 9

*Daugherty v. Experian Info. Solutions, Inc.,*
  847 F. Supp. 2d 1189 (N.D. Cal. 2012) ........................................... 11

*EEOC v. Waffle House, Inc.,*
  534 U.S. 279 (2002) ........................................................................... 17

*Ford v. Yasuda,*
  No. 5:13-cv-01961-PSG-DTB, 2015 U.S. Dist. LEXIS 79024 (C.D. Cal. Apr. 29, 2015) ... 14

*Fisher v. A.G. Becker Paribas Inc.*,
   791 F.2d 691 (9th Cir. 1986) ............................................................... 13

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................... 5, 9

*Gray Holdco, Inc. v. Cassady*,
   654 F.3d 444 (3d Cir. 2011) ................................................................. 17

*Hall v. Ikea Prop. Inc.*,
   No. 14-cv-12706, 2016 WL 1072091 (E.D. Mich. Mar. 17, 2016) ......... 15

*Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*,
   969 F.2d 796 (9th Cir. 1992) ............................................................... 14

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ................................................................................. 2

*In re VeriSign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................... 12

*Joca-Roca Real Estate, L.L.C. v. Brennan*,
   772 F.3d 945 (1st Cir. 2014) ............................................................... 17

*Kelly v. Pub. Util. Dist.*,
   No. 2, 552 F. App'x 663 (9th Cir. 2014) ............................................. 17

*Key ASIC, Ltd. v. Innovative Semiconductors, Inc.*,
   No. C-09-3355 RMW, 2010 U.S. Dist. LEXIS 10980 (N.D. Cal. Feb. 9, 2010) ................. 15

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ............................................................. 3, 4

*Larson v. Trans Union, L.L.C.*,
   ___ F. Supp. 3d ___, 2016 WL 4367253 (N.D. Cal. Aug. 11, 2016) .................. 18

*Martin v. Yasuda*,
   829 F.3d 1118 (9th Cir. 2016) .................................................. 2, 3, 13, 16

*MC Asset Recovery L.L.C. v. Castex Energy, Inc. (In re Mirant Corp.)*,
   613 F.3d 584 (5th Cir. 2010) ............................................................... 17

*Messina v. N. Cent. Distrib.*,
   821 F.3d 1047 (8th Cir. 2016) ............................................................. 17

*Meyer v. Kalanick*,
  No. 15 Civ. 9796, 2016 U.S. Dist. LEXIS 99921 (S.D.N.Y. July 29, 2016) .......... 1, 3, 6, 7, 8

*Mohamed v. Uber Techs, Inc.*,
  No. 15-16178, No. 15-16181, No. 15-16250,
  2016 U.S. App. LEXIS 16413 (9th Cir. Sept. 7, 2016) ...................................................... 2

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011) ...................................................................................... 3

*Nicosia v. Amazon.com, Inc.*,
  No. 15-423-cv, 2016 U.S. App. LEXIS 15656 (2d Cir. Aug. 25, 2016) ............................ 5, 6

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .................................................................................. 3, 5

*Plows v. Rockwell Collins, Inc.*,
  812 F. Supp. 2d 1063 (C.D. Cal. 2011) ................................................................ 13, 16, 17

*Pub. Util. Dist. No 1 v. IDACORP Inc.*,
  379 F.3d 641 (9th Cir. 2004) ...................................................................................... 19

*Rajagopalan v. NoteWorld, L.L.C.*,
  718 F.3d 844 (9th Cir. 2013) ........................................................................................ 4

*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2016) ...................................................................................... 7

*Van Ness Townhouses v. Mar Indus.*,
  862 F.2d 754 (9th Cir. 1988) .................................................................................. 1, 16

*Zink v. Merrill Lynch Pierce Fenner & Smith*,
  13 F.3d 330 (10th Cir. 1993) ...................................................................................... 12

**Statutes and Regulations**

15 U.S.C. § 1681g .......................................................................................................... 18

15 U.S.C. § 1681g (2012) .............................................................................................. 18

15 U.S.C. § 1681j (2012) ............................................................................................... 18

15 U.S.C. § 1681j (a)(1)(B) (2012) ................................................................................ 18

12 C.F.R. § 1022.136(d) ................................................................................................. 18

Plaintiff Sean Gilbert DeVries, by and through his undersigned counsel, hereby respectfully submits his opposition to Defendant Experian's Motion to Compel Arbitration (Dkt. No. 31). For the reasons stated below, Defendant's motion is without merit and must be denied.

## INTRODUCTION

As detailed below, Experian's motion to compel arbitration should be denied for several reasons, each of which is independently fatal to its position. Specifically:

1.  No agreement to arbitrate was formed;

2.  The arbitration provision explicitly excludes the claims at issue here, stating that "***for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate***";

3.  Experian has waived any right it may have had to invoke arbitration (assuming such a provision existed) by acting "inconsistently with its known existing right to arbitrate;"[1] i.e., by failing to assert the purported arbitration provision as an affirmative defense and by participating in discovery; and

4.  Experian's attempt to force arbitration violates public policy because it is trying condition a consumer's exercise of one federal right (i.e., the right to obtain a free credit report) upon the abandonment of another - *i.e.*, the "most precious and fundamental"[2] right to a jury trial.

Accordingly, Defendant's motion must be denied.

---

[1] *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988).
[2] *Meyer v. Kalanick*, No. 15 Civ. 9796, 2016 U.S. Dist. LEXIS 99921, at *1 (S.D.N.Y. July 29, 2016).

## STATEMENT OF RELEVANT FACTS

Federal law requires Experian to provide DeVries (and all other consumers) a free copy of their credit report on an annual basis. As alleged in the Complaint, Experian has thwarted DeVries and other consumers in their efforts to obtain this report, and have forced them to pay for it.

DeVries filed suit on June 2, 2016, since which time Experian has filed an Answer (which did not included arbitration among its 14 enumerated affirmative defenses), and has engaged in discovery, including the exchange of disclosures pursuant to Federal Civil Procedure Rule 26 and additional discovery requests and responses. (*See* Declaration of Michael R. Reese in Support of Opposition to Motion to Compel Arbitration ("Reese Decl."); Ex. A (Response to Defendant's Discovery Request); Ex. B (Plaintiff's interrogatories); Ex. C (Plaintiff's document requests); Ex. D (Plaintiff's initial disclosures); Ex. E (Defendant's initial disclosures); Ex. F (confidentiality order).) At no time prior to filing its instant motion on September 21, 2016, did Experian raise the specter of arbitration, or imply that DeVries' claims might be subject thereto. This is perhaps not surprising in light of the fact that the Experian Terms of Services in existence at the time this lawsuit was filed explicitly exclude those claims from the scope of the arbitration provision.

## ARGUMENT

## I.     THIS DISPUTE IS PROPERLY BEFORE THE COURT

Gateway issues of "'whether the parties are bound by a given arbitration clause' or whether 'an arbitration clause in a concededly binding contract applies to a particular type of controversy'" are presumptively for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Martin v. Yasuda*, 829 F.3d 1118, 1122 (9th Cir. July 21, 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "[T]he federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Mohamed v. Uber Techs, Inc.*, Nos. 15-16-178, 15-16-181, 15-16250, 2016 U.S. App. LEXIS 16413, at *12-13 (9th Cir. Sept. 7, 2016).

In *Martin*, the Ninth Circuit held that whether a party waived its right to arbitrate on the basis of its litigation conduct is for judicial determination. *Martin*, 829 F. 3d at 1122. Likewise, questions of whether the parties are bound by a given arbitration clause is "within the province of judicial review." *Momot v. Mastro*, 652 F.3d 982, 987 (9th 2011). Thus, the issues presented here are for judicial determination, despite the presence of a purported delegation provision, which provides that "[a]ll issues are for the arbitrator to decide." Importantly, the courts have held that such language; *i.e.,* language that purports to require that "all disputes, controversies, claims, causes of action and/or alleged breaches or failures to perform" be decided by an arbitrator, "***does not*** constitute 'clear and unmistakable' intent to refer issues of arbitrability to the arbitrator." *Capelli Enters. v. Fantastic Sams Solon Corp.*, No. 5:16-cv-03401-EJD, 2016 U.S. Dist. LEXIS 115036, at *10 (N.D. Cal. Aug. 26, 2016) (emphasis added). Accordingly, the issues presented here remain within the scope of judicial review.

## II.   DEVRIES DID NOT AGREE TO EXPERIAN'S TERMS AND CONDITONS AND THUS DID NOT CONSENT TO ARBITRATION.

"Sometimes forgotten in the Internet Age – where contracts of adhesion are often the rule for online consumers – is the essential element of contract formation: mutual manifestation of assent." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 383 (E.D.N.Y. 2015). Given that fact, it is important to recall from the outset that "under California law,[3] mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). In fact, the "'principle of knowing consent applies ***with particular force*** to provisions for arbitration,'"[4] and it is therefore well-settled that if one party wishes to "'bind another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the agreement will ***fully***

---

[3] "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014).

[4] This is so because arbitration abrogates the right to a jury trial, which "can be waived ***only*** if the waiver is knowing and voluntary, with the courts 'indulg[ing] every reasonable presumption against waiver.'" *Meyer v. Kalanick*, No. 15 Civ. 9796, 2016 U.S. Dist. LEXIS 99921, at *1 (S.D.N.Y. July 20, 2016) (emphasis added) (citation omitted).

***and clearly comprehend*** that the agreement to arbitrate exists and binds the parties thereto." *Knutson,* 771 F.3d at 566 (emphasis added) (citation omitted). Additionally, because the Federal Arbitration Act's "liberal policy favoring arbitration"[5] policy has no application to the initial determination of whether a valid agreement to arbitrate exists,[6] Experian, "as the party seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson*, 771 F.3d at 565.

A review of Experian's brief reveals that it has most certainly forgotten – and has invited the Court to disregard – the "essential element" of mutual manifestation of assent. Indeed, it specifically contends that by clicking on a button that did not mention, display, link to, or otherwise reference the Terms and Conditions it seeks to enforce against him, DeVries had "clear notice" of those Terms and Conditions, and is thus bound by them, "including the agreement obligating him to arbitrate, on an individual basis, any claims against [it]." (Mot. to Compel Arb. (Dkt. No. 31) at 8-9.) This is wrong. As explained in detail below, this argument is legally untenable and has been rejected by courts across the country, which have refused identical invitations to compel arbitration in cases with facts indistinguishable from those presented here.

To purchase his credit report from Experian, DeVries visited its website and clicked a prominently positioned, bright yellow button emblazoned with the following text in large-type and all caps: "SUBMIT SECURE ORDER."



---

[5] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 1745 (2011).

[6] *See Rajagopala v. NoteWorld, LLC*, 718 F.3d 844, (9th Cir. 2013) (explaining that "the liberal federal policy regarding the scope of arbitrable issues is inapposite" where the question is not "whether a particular issue is arbitrable," but rather "whether a particular *party* is bound by the arbitration agreement") (italics in original).

1  (Williams Decl. Exs. B and C (Dkt. No. 34-1) at pgs. 182, 184).)[7] Above that graphic, in plain type

2  of a much smaller font, is the following paragraph:

> Click "Submit Secure Order" to accept the Terms and Conditions above, acknowledge receipt of our Privacy Notice and agree
> to its terms, confirm your authorization for ConsumerInfo.com, Inc., an Experian company, to obtain your credit report and
> submit your secure order.

5      Experian contends that this paragraph and its statement requiring acceptance of "the Terms

6  and Conditions above;" i.e., those found on the same page (which contains **_no reference_** to

7  arbitration) provided DeVries with sufficient notice of, and bound him to, another set of Terms and

8  Conditions that were not included "above," that were accessible only via a distant hyperlink, and that

9  DeVries did not have to review (or even see) in order to complete his purchase. Unfortunately for

10  Experian, the courts have consistently recognized that "consumers cannot be expected to ferret out

11  hyperlinks to terms and conditions to which they have no reason to suspect they will be bound,"[8] and

12  have thus refused to find consumer consent under circumstances similar to those presented here.

13  Indeed, it even appears that there is a link to Legal Terms & Conditions above the Submit Secure

14  Order **_that contain no arbitration provision whatsoever_**, thereby adding to consumer confusion and

15  undermining the notion the consumer agreed to any terms at all.  *See* Reese Decl. Ex. F-2.

16      Illustrative of the courts' reasoning in such cases is *Nicosia v. Amazon.com, Inc.*, which arose

17  out of the plaintiff's purchase of a weight loss product through Amazon.com. *Nicosia*, No. 15-423-

18  cv, 2016 U.S. App. LEXIS 15656, at *2 (2d Cir. Aug. 25, 2016). Amazon's website, like Experian's,

19  featured an agreement that "was neither a clickwrap nor a browsewrap agreement,"[9] but rather "was

---

[7] Experian has included a reproduction of the order screen at page 3 of its brief (Dkt. No. 31).

[8] *Nguyen*, 763 F.3d at 1179.

[9] Generally speaking, contracts formed via the Internet "come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76. More recently, another "questionable form of internet contracting has been used;" specifically "sign-in-wraps." *Berkson*, 97 F. Supp. 3d at 398. These agreements, like the one on Experian's website, "do not require the user to click on a box showing acceptance of the 'terms of use' in order to continue" or place an order. *Id*. Rather, the site is designed "so that a user is notified of the existence and applicability of the site's 'terms of use'

something in between." *Id.* at *27. Specifically, an Amazon purchaser, like an Experian credit report purchaser, "was not required to click an 'I agree' box after being presented with a list of terms and conditions." *Id.* Nor was she "simply left to browse the page, as she was asked to click on a 'Place your order' button after being told elsewhere on the page that 'By placing your order, you agree to Amazon.com's privacy notice and conditions of use,' with the latter phrase hyperlinked to the 2012 Conditions of Use." *Id.*

Citing the existence of an arbitration agreement in the hyperlinked Conditions of Use, Amazon filed a motion to dismiss, which the district court granted. The Second Circuit reversed, concluding that a reasonably prudent consumer could not be charged with even inquiry notice that making a purchase through Amazon.com manifested implied consent to the Conditions of Use (or the arbitration provision contained therein). *Nicosia*, 2016 U.S. App. LEXIS 15656, at *27-28. In so concluding, the court first noted that "unlike typical 'clickwrap' agreements, clicking 'Place your order' <u>does not</u> specifically manifest assent to the additional terms, for the purchaser is not specifically asked whether she agrees or to say 'I agree.'" *Id.* at *30. The same is true here, where DeVries was not specifically asked whether he agreed, or to say "I agree" when he clicked the "SUBMIT SECURE ORDER" button.

The *Nicosia* Court went on to explain that "[n]othing about the place your order button alone suggests that additional terms apply," and that "[t]he message itself - - 'By placing your order, you agree to Amazon.com's . . . Conditions of Use,'" like the Experian's message relative to its Terms and Conditions, "<u>is not bold, capitalized, or conspicuous in light of the whole webpage</u>." *Nicosia*, 2016 U.S. App. LEXIS 15656, at *30 (emphasis added). Additionally, the court found that the "presence of customers' personal address, credit card information, shipping options, and purchase summary" – most, if not all, of which are likewise present on Experian's site – are sufficiently

---

when proceeding through the website's sign-in or login process." *Id.* Some courts describe these agreements as a hybrid of browsewrap and clickwrap, explaining that they "are somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else – click "Sign Up" – to assent to the hyperlinked terms." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838 (S.D.N.Y. 2012).

distracting so as to temper whatever effect the notification has." *Id*. at \*31-32. In light of the foregoing, the court held that "reasonable minds could disagree on the reasonableness of [Amazon's] notice," and therefore held that "Amazon has failed to show that Nicosia was on notice and agreed to mandatory arbitration as a matter of law." *Id*. at \*33.

A similar result obtained in *Meyer v. Kalanick*, where the court denied the defendants' motion to compel arbitration, concluding that the plaintiff "never agreed to waive his right to a jury trial or to submit to mandatory arbitration" when he created an Uber account by visiting its website and clicking a button emblazoned with the word "Register," immediately below which appeared the following notice (with hyperlinks): "By creating an Uber account, you agree to the Terms of Service and Privacy Policy." *Meyer*, No. 15 Civ. 9796, 2016 U.S. Dist. LEXIS 99921, at \*\*3, 14 (S.D.N.Y. July 29, 2016). Informing the court's decision was the fact that Meyer, like DeVries, "did not need to affirmatively click any box saying that he agreed to Uber's 'Terms of Service,'" but rather "could sign up for Uber by clicking on the "Register" button without explicitly indicating his assent to the terms and conditions that included the arbitration provision," and "'without hosting the page hosting the browsewrap agreement or even knowing that such a webpage exists.'" *Id*. at \*19-20; *see also Berkson*, 97 F. Supp. 3d at 404 (denying motion to compel arbitration in part because once the plaintiff "clicked 'SIGN IN,' the 'terms of use' did not appear on a new screen or in a pop up window on the same screen," and because he "was not required to scroll through the contract of adhesion and its boilerplate in order to click 'accept' or 'I agree'").

Also of importance in *Meyer* was the fact that the hyperlink to the "Terms of Service & Privacy Policy" was "by no means prominently displayed," while "the payment information and 'Register' button are 'very user friendly and obvious.'" *Meyer*, 2016 U.S. Dist. LEXIS 99921, at \*28; *see also Berkson*, 97 F. Supp. 3d at 404 (denying motion to compel arbitration where "[t]he hyperlink to the 'terms of use' was not in large font, all caps, or in bold," but "the "SIGN IN" button is very user friendly and obvious, appearing in all caps, in a clearly delineated box"). This is critical because the court "cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2016).

Finally, the *Meyer* court took issue with the semantics of Uber's purported notice, explaining that "the wording of Uber's hyperlink add[ed] to the relative obscurity" of the agreement as "[t]he Court cannot simply assume that the reasonable (non-lawyer) [internet] user is aware of the likely contents of "Terms and Service," especially when that phrase is placed directly alongside "Privacy Policy." *Meyer*, 2016 U.S. Dist. LEXIS 99921, at *31-32. Indeed, "[t]he reasonable user might be forgiven for assuming that 'Terms of Service' refers to a description of the types of services that Uber intends to provide, not to the user's waiver of his constitutional right to a jury trial or his right to pursue legal redress in court should Uber violate the law." *Id.* at *32. Accordingly, the court held that:

> When contractual terms as significant as the relinquishment of one's right to a jury trial or even of the right to sue in court are accessible only via a small and distant hyperlink titled "Terms of Service & Privacy Policy," with text about agreement thereto presented even more obscurely, <u>there is a genuine risk that a fundamental principle of contract formation will be left in the dust: the requirement for "a manifestation of mutual consent</u>." (Citation omitted) . . . The purveyors of electronic form contracts are legally required to take steps to provide consumers with "reasonable notice of contractual terms. (Citation omitted) User interfaces designed to encourage users to overlook contractual terms in the process of gaining access to a product or service are hardly a suitable way to fulfill that mandate.

*Id.* at *34–35 (emphasis added).

In this case, as in those cited above, DeVries was confronted with a



 button that was "very user friendly and obvious, appearing in all caps, in a clearly delineated box," and that stood in stark contrast to the paragraph containing reference to the "Terms and Conditions above," which was "by no means prominently displayed," having been relegated to plain type of much smaller font, which was not underlined to indicate the existence of a hyperlink. Under such circumstances, DeVries can certainly "be forgiven for assuming that 'Terms of Service' refer[red] to a description of the types of services that [Experian] intends to provide, not to [his] waiver of his constitutional right to a jury trial or his right to pursue legal redress in court should [Experian] violate the law." *Meyer*, 2016 U.S. Dist. LEXIS 99921, at *31-32. Accordingly, Experian's motion should be denied.

1

2

3      The cases Experian cites do not compel a different conclusion, as the defendants in those

4  cases, including Experian itself, provided explicit notice of both the existence and scope of the

5  Terms and Conditions to which it wished to bind consumers. First, Experian cites a number of orders

6  in which courts have purportedly upheld and enforced the same Terms and Conditions that are at

7  issue here. (*See* Mot. to Compel Arb. at 7.) Fatal to Experian's reliance on those cases (which simply

8  apply the same order in multiple proceedings), is the fact that in each instance Terms and Conditions

9  were set forth "in a scroll box" found <u>on the same page</u> as the SUBMIT SECURE ORDER button.

10  Accordingly, "[a] consumer could view and read <u>the complete text of the Terms and Conditions,</u>"

11  including the arbitration provision, "by scrolling down within the scroll box" and without leaving the

12  order page. (*See* Orders in *Johnson v. ConsumerInfo.com, Inc.*, Case No. CV 11-02753-JVS (FMOx)

13  (Aug. 3, 2011) (Dkt. No. 32-1) at pg. 1; *Waring v. Johnson v. ConsumerInfo.com, Inc.*, Case No.

14  SACV 11-0639 JVS (FMOx) (Nov. 14, 2011) (Dkt. No. 32-1) at pg. 1 (granting defendant's motion

15  to compel arbitration "[f]or the same reasons set forth in *Johnson*, attached hereto"); *Bird v.

16  ConsumerInfo.com, Inc.*, Case No. SACV 11-0618 JVS) (FMOx) (Nov. 14, 2011) (Dkt. No. 32-1) at

17  pg. 1 (same); *Grosz v. ConsumerInfo.com, Inc.*, Case No. SACV 11-0550 JVS (FMOx) (Nov. 14,

18  2011) (Dkt. No. 32-1) at pg. 1 (same); *Possin v. ConsumerInfo.com, Inc.*, Case No. SACV 11-0-156-

19  JVS (ANx) (Nov. 14, 2011) (ECF No. 32-1) at pg. 1 (finding case to be indistinguishable from

20  *Johnson*).) That is not the case here, as Experian's website no longer includes the above-described

21  scroll box. (*See* Mot. to Compel Arb. at 3.)

22      The other cases Experian cites are similarly distinguishable, as the courts in those cases too

23  required affirmative acknowledgments of understanding and agreement from the consumers to

24  constitute consent to be bound. *See Crawford v. Beachbody*, *LLC*, No. 14cv1583-GPC(KSC), 2014

25  U.S. Dist. LEXIS 156658, at *3 (S.D. Cal. Nov. 5, 2014) (granting defendant's motion to transfer

26  venue because consumer consented to forum selection clause contained in the "Beachbody Purchase

27  Terms and Conditions," by making a purchase on the defendant's website, which included the

28  following notice: "By clicking Place Order below, you are agreeing that <u>you have read and</u>

<u>understand</u> the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions") (emphasis added); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, (S.D.N.Y. 2012) (granting defendant's motion to transfer venue because consumer consented to forum selection clause found in its Terms of Service by signing up for an account on its website, which included the following notice: "By clicking Sign Up, you are indicating that <u>you have read and agree to</u> the Terms of Service") (emphasis added). Because Experian's website did not require DeVries to confirm that he had read, understood and/or agreed to its Terms and Conditions, its reliance on *Crawford* and *Fteja* is misplaced, and its arguments based thereon should be rejected.

## III.   THE APPLICABLE ARBITRATION PROVISION EXPLICITLY EXCLUDES THE CLAIMS DEVRIES BRINGS HERE

Even Assuming that Experian is correct in asserting the existence of Terms and Conditions that contain an arbitration provision to which the parties agreed (which, as explained above, it is not), its motion must still be denied for the simple and indisputable reason that ***the terms of the arbitration clause itself exclude the claims at issue here from being arbitrated***. Specifically, Experian's Terms of Use Agreement at the time the lawsuit was filed provide, in relevant part, that:

> . . .for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act ("FCRA") relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

(Reese Decl., Ex. G.)

Experian contends that other terms apply, arguing that the agreement governing its relationship with DeVries is actually set forth in a document bearing the caption "Terms and Conditions" and dated July 13, 2012. (Dkt. No. 34-1 at pp. 185-96 (Exhibit D to Def. Motion to Compel Arb.).) That is false.

First, it appears that the arbitration provision was amended on August 26, 2014 – prior to the transaction at issue – to exclude FRCA-related claims from arbitration. (Reese Decl., Ex. H). If that is the case, then there is, and can be, no legitimate basis for Experian to assert a colorable claim of entitlement to arbitration. Second, even if it is assumed that the FCRA exclusion post-dates DeVries' purchase, Experian admits (or at least does not dispute) that at the time this suit was filed on June 2,

2016, the so-called governing Terms of Use Agreement excluded FCRA-related claims from arbitration. (Reese Decl., Ex. H.) Although the details of when the agreement was changed (and perhaps more importantly, why it was changed) are solely within Experian's possession, it is uncontested they were in effect no later than April 5, 2016. The new terms state:

> You agree that by . . . accessing or using our . . . website(s) (such as this website, hpttps://usa.experian.com, or any affiliated website (including, but not limited to, **Experian.com, FreeCreditReport.com, FreeCreditScore.com, CreditReport.com, and CreditScore.com**)) . . . , as well as any content provided or accessible in connection with the website(s) or mobile application(s) . . . you represent to ECS that you have read, understood, and expressly consent and agree to be bound by this Terms of Use Agreement, and the terms, conditions, and notices contained or references herein ("Agreement") . . . .

(Reese Decl., Ex. G [4/5/2016 Terms and Conditions] at p.1.)

The terms further state, "[t]his Agreement . . . constitute[sic] the entire Agreement between ECS and you in connection with your account with ECS, or access or use of any Services or Website, _**and superseded any prior versions off the terms and conditions**_, if applicable." (_Id._ at p. 25 (emphasis added).)[10] Finally, the terms state, "[i]in the event of a conflict between this Agreement, or any other notice, policy, disclaimer or other term contained in the Websites or otherwise, this Agreement will control." (_Id._)

In this case, DeVries accessed www.experian.com on approximately May 18, 2016, while reviewing the complaint prior to filing, and again more recently on September 16, 2016. (_See_

---

[10] It is important to be aware that the 2012 Terms and Conditions (upon which Experian relies) state that those terms "may be updated from time to time," and go on to state that "[e]ach time you order, access or use any of the Products, Product Websites, and/or Content, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." _Id._ (Emphasis added.) As noted above, DeVries has accessed the website since April 5, 2016 and is his enrollment in the service is ongoing. Accordingly, by Experian's own terms, the provision that excludes FCRA related claims from arbitration are operative. (Dkt. No. 34-1 at pg. 186). _See_ Declaration of Sean DeVries in Support of Opposition to Compel Arbitration ("DeVries Decl.") ¶¶ 2-3.

DeVries Decl. ¶ 2.) Thus, the terms that govern the parties' relationship here are those set forth in the Terms of Use Agreement at the time of the June 2, 2016 filing. *See Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1192 (N.D. Cal. 2012) (Defendant used a change-of-terms clause in a previous agreement to invoke an arbitration clause found in later revised terms); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1188 (S.D. Cal. 2013) (allowing change-of-terms clause in previous agreement to make later revised terms operative). This is fatal to Experian's motion because, as set forth previously, the  Terms of Use Agreement at time of filing explicitly excludes FCRA claims from the scope of its arbitration cause, stating:

> However, for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

(*Compare* Reese Decl., Ex. G [4/5/2016 Terms and Conditions] at pp. 5-6 *with* Dkt. No. 34-1 at pp. 186-87 (agreement to arbitrate "all disputes and claims" between the parties, including those arising under statute).)

In short, Experian has carved out claims "relating to information contained in your consumer disclosure or report" from the arbitration provision. The term "relating to" has been interpreted by courts very broadly. *See Cayanan*, 928 F. Supp. 2d at 1207 ("'relating to' should lead to a broad interpretation); *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("relating to" creates the broader interpretation of the clause). At the very heart of DeVries' claim is his desire for the information within his credit report and Experian's failure to provide him that information. Thus, DeVries' claims fall squarely within the carve out-created by Experian.

It is also important to be aware that once modified, revised terms of an agreement to arbitrate apply to all disputes between the parties, including those which accrued prior to the change in terms. Retroactive application of arbitration provisions is not only acceptable, but commonplace, even when the retroactive effect is not expressly stated. *See In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (compelling arbitration notwithstanding events underlying claims occurred before parties executed agreement containing arbitration provision); *Cara's Notions v. Hallmark Cards*, 140 F. 3d 566, 568 (4th Cir. 1998); *Coenen v. R. W. Pressprich & Co*., 453 F.2d

1209, 1212 (2d Cir. 1972) (holding broad arbitration provision encompassed disputes that accrued before assent to the arbitration provision); *Zink v. Merrill Lynch Pierce Fenner & Smith*, 13 F.3d 330, 332 (10th Cir. 1993) (contract principles governing arbitration agreement demonstrate that actions giving rise to dispute may pre-date agreement to arbitrate).

The *In re Verisign* decision is particularly relevant here, because there, as here, the events underlying the substantive claims may have taken place before the change to the arbitration provision was executed.[11] 531 F. Supp. 2d at 1223-24. Despite the fact that the agreement did not explicitly govern or amend prior agreements, the court found that the arbitration provision encompassed all disputes between the parties. *Id.* Here, the case for application of the new terms is even stronger because Experian explicitly reserved the right to change the terms and conditions of the agreement, and exercised its right to do so in April of 2016, two months prior to the filing of this lawsuit. Thus, to the extent that Experian has any enforceable right to arbitration whatsoever (which it does not, as explained above), and to the extent it has not waived that right (which it has, as explained below), the relevant agreement excludes the claims at issue in this case.

## IV.     EXPERIAN HAS WAIVED THE ABILITY TO ARBITRATE.

As noted above, DeVries filed suit on June 2, 2016. (Dkt. No. 1.)  Since that time, the parties have devoted substantial time and resources to litigating this case. Tellingly, at no time prior to filing its instant motion did Experian ever raise the issue or possibility of arbitration. Rather, it took full advantage of the legal process, including, but not limited, to: engaging in discovery; filing an Answer (Dkt. No. 26), which asserts 14 affirmative defenses (none of which is arbitration) and seeks costs and fees against DeVries; exchanging initial Rule 26 disclosures and additional discovery requests/responses; drafting a discovery plan (which did not include a request for a stay); drafting and submission of a protective order; engaging in multiple meet and confer discussions regarding discovery and scheduling; and drafting, negotiating, and filing proposed orders with the Court.

---

[11] As see in Exhibit I of the Reese Declaration, it appears the section of the arbitration provision excluding the claims at issues here from arbitration were added on August 26, 2014.

1   (Reese Decl. ¶¶ 3-4.) The law is clear that a defendant cannot first utilize these court procedures and

2   benefit from discovery and then, for the first time, assert a right to arbitration.

### A.      Legal Standard on Waiver of Arbitration.

4   To prove a waiver of arbitration, a party must demonstrate: "(1) knowledge of an existing

5   right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the

6   party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*,

7   791 F.2d 691, 694 (9th Cir. 1986). While the Ninth Circuit recently noted that there "is no concrete

8   test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate,"

9   it has consistently recognized that, "a party's extended silence and delay in moving for arbitration

10  may indicate a 'conscious decision to continue to seek judicial judgments on the merits of [the]

11  arbitrable claims,' which would be inconsistent with a right to arbitrate." *Martin*, 829 F.3d at 1118

12  (affirming denial of motion to compel arbitration). In this case, all three elements are met.

13  Accordingly, Defendant's motion should be denied.

### B.      Experian Knew of its Right to Arbitration.

15  As the author of the Terms and Conditions that contain the arbitration provision, Experian is

16  charged with irrefutable knowledge of its right to seek arbitration. *Plows v. Rockwell Collins, Inc.*

17  812 F. Supp. 2d 1063, 1067 (C.D. Cal. 2013) ("As Defendant drafted the employment agreement

18  containing the relevant arbitration clause, it is beyond dispute that Defendant knew of its right to

19  seek arbitration."); *see also Ford v. Yasuda*, 5:13-cv-01961-PSG-DTB, 2015 U.S. Dist. LEXIS

20  79024, at *9 (C.D. Cal. Apr. 29, 2015) ("Knowledge of a contractual right to arbitrate is imputed to a

21  contract's drafter."); *Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798

22  (9th Cir. 1992) (defendant had knowledge of the right to arbitrate because it was in the contract that

23  it drafted)). Thus, it is undisputed that Defendant had knowledge of an existing right to compel

24  arbitration. Its contention that it could not have known there was an arbitration agreement until it had

25  Plaintiff's personal information is spurious. The Complaint provided all the necessary information,

26  including Plaintiff's full name; his place of residence; and the date he acquired the credit report.

27  Complaint (Dkt. 1) at ¶¶ 1, 6, 21. With this information, Defendant could have easily formulated a

28  position on whether there was a potential claim for arbitration.

Despite the foregoing authority, Experian insists its delay is justified, contending that it was unable to determine whether DeVries had entered into a contract with an arbitration provision until he provided his social security number, date of birth, and address, which Experian alleges did not occur until September 14, 2016. (*See* Def. Motion to Compel Arb. at 6.) Its assertion in this regard is spurious for two reasons. First, DeVries' Complaint provided all of the information necessary for Experian to determine whether the claims he has asserted might be subject to arbitration. Specifically, DeVries provided his name, his place of residence, and an affirmative allegation that he purchased his credit report from Experian "on or about September 3, 2014." (Compl. ¶21-22, 27.) And second, if the allegations in the Williams Declaration are to be believed, every person who purchased an Experian credit report through its website in 2014, including DeVries, was required to accept the Terms and Conditions, which included an arbitration provision. (*See* Williams Decl. ¶4.) Indeed, the arbitration provision cited by Experian does not contain an opt-out provision. (*See* Dkt. No. 34-1 at pgs. 186-187). As such, under Experian's theory, there is no pool of individuals who purchased a report through www.experian.com in 2014 who were not subject to the arbitration provision. DeVries has at all times admitted he purchased an Experian credit report through www.experian.com in 2014. (Doc. 1, ¶ 27.) Moreover, he had to pay for it, and his payment was required to be made by credit card. (*See* Dkt. No. 34-1 at pg.184.) Experian could easily have checked its accounting records to determine whether DeVries made a purchase, thus proving its sole justification for delay—*i.e.* lack of knowledge of whether DeVries purchased the product—to be completely without merit.

Furthermore, and critical to the waiver argument, is the fact that Experian could have requested a stay of litigation at the beginning of the litigation, requested limited discovery for receipt of the information it supposedly needed in order to assess the arbitrability of this matter. It did not. In short, Experian without question had knowledge of the arbitration agreement.

C.      **Experian has Acted Inconsistently With Its Claim to Arbitrate.**

1.      **Experian Failed to Plead Arbitration As an Affirmative Defense.**

"[A] defendant who wishes to assert the right to arbitration must urge it as an affirmative defense in the answer and that failure to include such a defense in the answer amounts to a waiver of arbitration." *Butchers Union v. Farmers Markets*, 67 Cal. App. 3d 905, 913 (Cal. Ct. App. 1977); *see also Key ASIC, Ltd. v. Innovative Semiconductors, Inc.*, No. C-09-3355 RMW, 2010 U.S. Dist. LEXIS 10980, at *9 (N.D. Cal. Feb. 9, 2010) (explaining that defendants "filed a joint Answer to the first amended complaint, and did not raise arbitration as an affirmative defense," and noting that "[c]ase law has recognized that such a failure may itself constitute a waiver"). Accordingly, the courts have declined to order arbitration in cases where the defendant has failed to plead it as an affirmative defense, explaining that:

> [A] defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate. The filing of an answer is, after all the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue.

*Hall v. Ikea Property Inc.*, Case No. 14-cv-12706, 2016 WL 1072091 (E.D. Mich. March 17, 2016) *citing Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012) (affirming denial of motion to compel arbitration).

Here, Experian answered the complaint asserting 14 affirmative defenses and asking the Court to award it attorneys' fees and costs of suit. It did not, however, assert arbitration as an affirmative defense. This failure constitutes a waiver and mandates denial of Experian's motion.

2.      **Experian has Engaged in Discovery and Taken Advantage of the Court.**

This case has been pending for months, during which time the parties have expended substantial time and resources litigating this matter. Experian has taken full advantage of the legal process, including, but not limited, to: engaging in and receiving discovery (that it would not have received in arbitration); filing an Answer; exchanging initial Rule 26 disclosures and additional discovery requests/responses; drafting a discovery plan (which did not include a request for a stay); drafting and submission of a protective order; engaging in multiple meet and confer discussions regarding discovery and scheduling; and drafting, negotiating, and filing proposed orders with the

1    Court. (Reese Decl. ¶¶ 3-4.) At no point prior to filing its instant motion did Experian argue that

2    DeVries' claims were potentially subject to arbitration, or that discovery should be stayed for that

3    reason. It was only after Experian hoodwinked DeVries into producing discovery (that would not be

4    produced in arbitration) that it reversed course and now claims that the matter always should have

5    been in arbitration.

6         Fatal to Experian's position is the fact that the Ninth Circuit has refused to order arbitration

7    in cases where a defendant has participated actively in the litigation process, thereby acting

8    "inconsistently with its known existing right to arbitrate." *Van Ness Townhouses v. Mar Industries*

9    *Corp.*, 862 F.2d 754, 759 (9th Cir. 1988). In *Van Ness Townhouses*, the Ninth Circuit reversed a

10   district court's order compelling arbitration, explaining that the defendant's "extended silence and

11   much-delayed demand for arbitration indicates a 'conscious decision to continue to seek judicial

12   judgment on the merits of [the] arbitral claims.'" *Id.* Accordingly, it held that the defendant had

13   waived arbitration of the plaintiff's claims. *Id.*; *see also Martin*, 829 F.3d at 1125 citing *Plows*, 812

14   F.Supp.2d at 1067–68 (finding this element satisfied when the defendant actively litigated the case

15   participating in meetings and scheduling conferences, negotiating and entering into a protective

16   order, and participating in discovery that would not have been available under the arbitration

17   agreement).

18        In this case, as in those cited above, Experian has actively participated in the litigation

19   process, and has acted inconsistently with its existing right to arbitrate. Accordingly, its motion

20   should be denied.

21        **D.    DeVries is Prejudiced by Experian's Delay.**

22        When a party has expended time and money due to the opposing party's failure to timely

23   move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to

24   compel, the party is prejudiced. *See, e.g.*, *Kelly v. Pub. Util. Dist. No. 2,* 552 Fed. Appx. 663, 664

25   (9th Cir. 2014) (finding party took inconsistent acts where it "conducted discovery and litigated

26   motions, including a preliminary injunction and a motion to dismiss") (finding prejudice when the

27   defendants waited eleven months to compel arbitration); *Joca-Roca Real Estate, LLC v. Brennan*,

28   772 F.3d 945, 949, 951 n.7 (1st Cir. 2014) (finding prejudice with a nine-month delay after the filing

of the complaint); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 454–55 (3d Cir. 2011) (holding that a ten-month delay before moving to compel weighed in favor of waiver); *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1051 (8th Cir.2016) (finding prejudice after an eight-month delay); and *In re Mirant*, 613 F.3d at 591 (considering litigation expenses in prejudice inquiry after defendant waited 18 months before moving to compel arbitration); *Plows*, 812 F. Supp. 2d at 1068 (holding that thirteen months of legal fees and presumably the different choices that would have been made had plaintiffs known the case was going to arbitration were contributing factors to a finding of prejudice). Here, DeVries and his counsel have expended a significant amount of time and resources. Moreover, Experian has used the litigation to receive discovery it would not receive in arbitration, as well as have court orders and other procedures set in place that it would not be entitled to in arbitration. Accordingly, DeVries has been prejudiced by Experian's failure to raise the arbitration defense in a timely manner.

## V.   CONDITIONING A FREE FILE DISCLOSURE UPON AN CONSUMER'S AGREEMENT TO ARBITRATE VIOLATES PUBLIC POLICY.

In addition to the reasons discussed above, there is yet another, and perhaps more fundamental, reason why this Court should deny Experian's motion. Specifically, the FCRA unequivocally provides consumers with an unfettered right to obtain their credit files annually for free from a nationwide consumer reporting agency ("CRA") such as Experian. By requiring consumers to waive their right to court assistance and/or to assert their claims as part of a class action, Experian obviated those rights by removing the "free of charge" component and imposing a *quid pro quo*. In doing so, it unlawfully imposed a cost or condition on something that was required by law to be free and without restraint in violation of public policy. It is axiomatic that an arbitration clause may not limit a consumer's statutory rights. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 307 n.10 (2002); *Armendariz v. Found. Health Psychare Servs., Inc.*, 6 P. 3d 669, 682 (Cal. 2000). This is presumably why Experian now excludes FCRA claims from the scope of its arbitration provision.

The Complaint alleges that in violation of sections 1681g and 1681j of the FCRA, Experian failed to provide to DeVries with a free copy of his credit report from its centralized source (i.e. www.AnnualCreditReport.com) after he requested it, forcing him to order it his file from Experian's

1    website and pay a $10.00 fee. (Compl. ¶¶ 15-28, 43-50.) Thus, it was only after DeVries was refused

2    his file through the centralized source (which does not include arbitration clauses) that he had to pay

3    and submit to Experian's arbitration provision.

4        A consumer's right to his or her credit file is a fundamental right under the FCRA. 15 U.S.C.

5    §1681g; *see also Larson v. Trans Union, LLC*, ___ F. Supp. 3d ___, 2016 WL 4367253 (N.D. Cal.

6    Aug. 11, 2016). Through the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"),[12]

7    Congress amended the FCRA to require that the nationwide CRAs, including Experian, provide

8    consumers with a free annual copy of their credit file. *See* 15 U.S.C. §1681j. Prior to that, CRAs

9    were entitled to charge a fee, usually $8.00-$9.00,[13] unless the consumer had recently been denied

10   credit or one of several other exceptions applied. In passing FACTA, Congress reinforced the

11   fundamental nature of consumers' right to access their files by requiring the CRAs to provide file

12   disclosures free of charge, and established a centralized source through which consumers can request

13   their files. 15 U.S.C. §1681j(a)(1)(B).

14       If the plain reading of FCRA sections 1681g and j left any ambiguity as to whether

15   consumers' rights to obtain their files free of charge and without any encumbrances were unfettered,

16   the Consumer Financial Protection Bureau eradicated it when it enacted Regulation V and prohibited

17   CRAs from: "*Ask[ing] or require[ing] consumers to agree to terms or conditions* in connection with

18   obtaining an annual file disclosure." 12 C.F.R. §1022.136(d) (emphasis added). There can be no

19   doubt that Experian's   arbitration clause and class action waiver constituted "terms" and

20   "conditions" to DeVries' right to his free file disclosure. [14] Because FCRA specifically prohibits the

21   imposition of any terms or conditions on a consumer's right to his file disclosure, Experian's

22   arbitration clause is contrary to public policy.

23       Finally, if, *arguendo*, the Court finds the FCRA and Regulation V do not displace the FAA,

24   and thereby the entire arbitration provision, the Court should find the FCRA and Regulation V do

---

[12] Pub. L. No. 108-159 (2003).

[13] The fees permitted to be charged under the newly amended FCRA remain about the same.

---

preempt the class action waiver. Class action waivers are a matter of contract which, although not unconscionable, are not part of or protected by the FAA or any other statute. It is axiomatic that where a contract conflicts with a federal statute, the contract provision is void. *Anderson v. Clarkins*, 135 U.S. 483, 489-90 (1890) (a contract that conflicted with the federal statute is void); *Public Utl. Dist. No. 1 v. IDACORP, Inc.*, 379 F.3d 641, 650 (9th Cir. 2004) (contract preemption preempts state contract law where it conflicts with a federal statute). If the Court, finds as such, the final sentence of section (f) of both the 2012 and 2016 terms—the section containing the class action waiver—require the entire arbitration provision is unenforceable. Because the FCRA and Regulation V provision prohibiting terms and conditions for the receipt of a report preempt the class action waiver, thereby making it unenforceable, the entire arbitration provision, by its terms, is unenforceable.

1

## <u>CONCLUSION</u>

2   For the reasons stated above, Experian's motion to compel arbitration must be denied.

3

4                                          Respectfully submitted,

5   Date: October 14, 2016                 **REESE LLP**

6

7                              By: */s/ Michael R. Reese*_____
                                   Michael R. Reese

8
                                   - and -
9

10                                 Melissa W. Wolchansky
                                   **HALUNEN LAW**
11

12                                 James A. Francis
                                   David A. Searles
13                                 John J. Soumilas
                                   **FRANCIS & MAILMAN P.C.**
14

15                                 *Counsel for Plaintiff Sean Gilbert DeVries
                                   and the Proposed Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael R. Reese, hereby certify that on October 14, 2016, I caused the foregoing document to be filed electronically in the above-captioned action via the Court's CM/ECF system, which caused electronic copies to be served on all counsel of record.


                                    */s/ Michael R. Reese*
                                    Michael R. Reese